John W. McDonald appeals from a summary judgment entered in favor of the defendants, David J. Slyman and U.S. Die Casting and Development Company (hereinafter the defendants, when possible, will be collectively referred to as "USDC"), in his action based upon an alleged breach of an employment contract and failure to pay relocation expenses. That summary judgment was made final pursuant to Rule 54(b), A.R.Civ.P.
On May 6, 1985, McDonald and Slyman entered into a pre-incorporation agreement wherein McDonald was to be hired as president of a corporation to be formed by Slyman, with its principal office to be located in Sheffield, Alabama. The corporation, USDC, was incorporated as an Ohio corporation on July 12, 1985.
On August 20, 1985, three separate written agreements were executed, as follows: an "agreement" entered into by McDonald, Slyman, and USDC; a "stock purchase agreement" entered into by McDonald, Slyman, and USDC; and an "employment agreement" entered into by USDC and McDonald.[1]
On August 25, 1985, the shareholders of USDC, by unanimous written consent, elected McDonald to serve on the corporation's board of directors for a term beginning on that date and expiring July 14, 1986. In March 1986, Slyman received a letter from McDonald, stating that he would resign from the board of directors of USDC, effective May 1, 1986, unless USDC provided him with $3,000,000 in liability insurance coverage. By letter dated May 13, 1986, Slyman, as chairman of the board of directors of USDC, informed McDonald that his letter of resignation would be respectfully accepted. McDonald never returned to work after July 31, 1986, when he was allegedly instructed by Slyman to "clean out [his] desk and go home." By letter dated August 14, 1986, Slyman, as chairman of the board of directors of USDC, informed McDonald that, because he had materially breached the "employment agreement," he was being terminated for cause as president of the corporation. The letter provided the following reasons for McDonald's termination:
 "(a) [F]ailure to return to work after leaving on July 31; . . .
 "(b) . . . [F]ailure to devote your 'full time, attention, skill and efforts' to the performance of your duties on behalf of the Company to maintain and promote our business; and
 "(c) . . . [F]ailure to act consistent with directions of the Company's Board of Directors as requested by the undersigned; and *Page 855 
 "(d) . . . [B]reach of Paragraph 6(b) of the Employment Agreement pursuant to which you agreed not to engage in other business pursuits except as specified in that Paragraph."
The first issue presented is whether USDC breached the terms of the employment agreement by terminating McDonald's employment without just cause prior to the expiration of the terms of the employment agreement.
If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment. Dill v. Blakeney, 568 So.2d 774
(Ala. 1990). However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury.Id. The question whether a contract is ambiguous is a question of law for the courts. Id.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. That rule requires the trial court to determine (1) that there is no genuine issue of material fact and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quoting from Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala. 1985)). In determining whether there was a genuine issue of material fact, this Court must view the evidence in a light most favorable to the nonmoving party, McDonald, and must resolve all reasonable doubts against the moving party, USDC. Id.
Because this action was not pending on June 11, 1987, the applicable standard of review is the "substantial evidence" rule. Ala. Code 1975, § 12-21-12.
Essentially, USDC devotes its entire argument to supporting its contention that McDonald breached the employment agreement when he unilaterally resigned from the board of directors in May 1986 and that the trial court therefore properly entered a summary judgment against him on his breach of contract action, which was based on facts occurring three months later. In other words, USDC argues that, because of McDonald's earlier breach of the employment agreement, he is precluded from enforcing that agreement.
A review of the August 20, 1985, employment agreement reveals, however, that that agreement did not provide, with any degree of specificity, whether McDonald was obligated to serve on the USDC board of directors. To the contrary, the agreement provided that McDonald would serve as an officer and would also serve as a director of USDC if he was requested to do so. The agreement did provide, however, that McDonald would hold the office of president and chief operating officer of the corporation for a term of five years. It was not until five days after McDonald had entered into the employment agreement that the shareholders elected him to serve on the USDC board of directors. In other words, based on the plain wording of the employment agreement, we must conclude that McDonald's obligation to serve as a director was, at best, incidental to his primary obligation to serve as president and chief operating officer of the corporation. Hence, USDC's contention that McDonald is barred from suing to enforce the employment agreement because of an alleged breach of that agreement three months earlier is without merit.
In light of the foregoing discussion and becauseeverything filed on behalf of *Page 856 
USDC in support of its motion for summary judgment revolved around the aforementioned assertions, we are compelled to the conclusion that the trial court erred in entering the summary judgment in USDC's favor, because USDC never made a prima facie showing that there was no genuine issue of material fact for a jury's consideration. See Berner v. Caldwell, supra.
The second issue presented is whether the trial court correctly entered summary judgment in USDC's favor regarding McDonald's claim for relocation expenses.
The question of relocation and moving expenses was first addressed by the parties in the May 6, 1985, "pre-incorporation agreement," wherein USDC agreed to pay McDonald's "relocation and moving expenses to Sheffield, Alabama."
However, on August 20, 1985, the parties entered into an agreement that provided that USDC was responsible only for paying the expense of moving McDonald's "household goods and belongings."
Additionally, the employment agreement contained the following two provisions:
"13. ENTIRE AGREEMENT
 "This Agreement embodies the entire understanding between the parties, any and all prior correspondence, conversation, or memoranda being merged herein and replaced hereby and being without effect hereon, and no change, alterations, or modification hereof may be made except in writing signed by both parties hereto.
". . . .
"15. CANCELLATION OF OTHER AGREEMENTS
 "Effective as of the date hereof, any and all employment agreements between Employee and the Company, or subsidiaries or affiliates thereof, are hereby in all respects terminated and cancelled and the Company shall assume no obligations thereunder or with respect thereto."
McDonald argues that, because of a mutual mistake, the employment agreement does not reflect the true intentions of the parties and that, therefore, the agreement is due to be reformed. We disagree.
Pursuant to Ala. Code 1975, § 8-1-2, McDonald requested the trial court to reform the employment agreement. That Code section provides as follows:
 "When, through fraud, a mutual mistake of the parties or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, so far as it can be done without prejudice to the rights acquired by third persons in good faith and for value."
It is well established that courts should exercise great caution and require a high degree of proof in cases of reformation of written instruments. Clemons v. Mallett,445 So.2d 276 (Ala. 1984). Moreover, "[a]t the trial level, the party opposing the instrument to be reformed [here McDonald]must produce evidence that is clear, convincing, and satisfactory, which proves that the [instrument] does not truly express the intentions of the parties." Id. at 279 (emphasis added). If the averments are
 "doubtful and unsatisfactory, and the mistake is not made entirely plain, equity will withhold relief; upon the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy."
Gayle v. Hudson, 10 Ala. 116, 128 (1846).
We conclude from a review of the record that, in light of the principles stated above, this is not a case for equitable reformation. Specifically, the record is devoid of any "clear, convincing, and satisfactory" evidence, that the August 20, 1985, employment agreement deviates from the intention and understanding of both parties at the time of its execution. Therefore, the trial court correctly entered the summary judgment in USDC's favor on this issue.
Last, McDonald argues that the trial court erred to reversal in failing to apply the law of the State of Ohio, in accordance with the employment agreement. However, because McDonald has not provided *Page 857 any showing of how the trial court's ruling was in error, we pretermit discussion of this issue.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.
[1] Only those issues arising out of the May 6, 1985, "pre-incorporation agreement" and the August 20, 1985, "employment agreement" are germane to this appeal. With respect to those issues arising out of the stock purchase agreement,see McDonald v. U.S. Die Casting Development Co.,541 So.2d 1064 (Ala. 1989).